IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LINDA LUCAS O/B/O B.J.L.,

    Plaintiff,

vs.                                            CIVIL ACTION NO. 3:17-CV-02954

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying Plaintiff's application she filed on behalf of her minor daughter for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383f. By Order entered May 17, 2017, (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief In Support of Defendant's Decision. (Document Nos. 12 and 15.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request to for judgment on the pleadings (Document No. 12.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 15.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, Linda Lucas (hereinafter referred to as "Plaintiff"), filed an application for SSI benefits on behalf of her minor daughter, B.J.L. (hereinafter referred to as "Claimant") on February 11, 2013 alleging disability due to "adhd and depression, dyslexia, anxiety, and learning disability." (Tr. at 207-212, 236.) The claim was initially denied on April 30, 2013 (Tr. at 116-119.) and again upon reconsideration on December 31, 2013. (Tr. at 125-131.) On February 3, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 132-134.)

Thereafter, on January 30, 2015, the administrative hearing before Robert M. Butler, ALJ, was continued in order for Plaintiff to obtain representation as well as to permit the Agency to obtain additional medical records on behalf of Claimant. (Tr. at 78-90.) After securing representation and the medical records, another hearing was held on June 4, 2015. (Tr. at 34-77.) On July 31, 2015, the ALJ entered an unfavorable decision. (Tr. at 10-33.) On September 29, 2015, Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 7-9.) The ALJ's decision became the final decision of the Commissioner on March 13, 2017 when the Appeals Council denied Plaintiff's Request for Review. (Tr. at 1-6.)

On May 13, 2017, Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 9 and 10.) Subsequently, Plaintiff filed her Brief in Support of Judgment on the Pleadings (Document No. 12.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 15.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 8 years old when her mother filed for disability benefits on her behalf and 11 at the time of the supplemental administrative hearing. (Tr. at 16.) During the relevant period,

she attended East Lynn Elementary School in Wayne County, West Virginia. (Tr. at 329.) School records submitted after the administrative hearing in June 2015 showed that Claimant advanced to the fifth grade despite her earlier difficulties in academics during the school year. (Tr. at 365-368.) Claimant takes Adderall for ADHD. (Tr. at 284.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner applies a three-step process in evaluating children's SSI claims. See 20 C.F.R. § 416.924(a). This process requires the Commissioner to consider, in order, whether the child 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets or equals, either medically or functionally, the requirements of a listed impairment. Id. § 416.924(b)-(d). As with the process for adults, if the Commissioner finds that a child is or is not disabled at any point in this process, the review does not proceed to the next step. Id. An ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets or equals an impairment listed in Appendix 1. See 20 C.F.R. §§ 416.924(c)-(d).

A child is disabled if the child is not engaged in substantial gainful activity and has a medically determinable physical or mental impairment or combination of impairments that result in "marked and severe functional limitations." 20 C.F.R. § 416.906. The impairment(s) must meet,

3

medically equal, or functionally equal, a listing in the Listing of Impairments. See 20 C.F.R. §§ 416.924 and 416.926a. An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a. The Regulations define a "marked" limitation when an impairment "interferes seriously" with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). The definition of "extreme" is "interferes very seriously" with the ability to function. 20 C.F.R. § 416.926a(e)(3).

The Commissioner is required to consider the totality of the evidence, that is, "no single piece of information taken in isolation", in determining whether a child has a marked or extreme limitation in a domain. See 20 C.F.R. § 416.926(e)(4). The Regulations set forth the following six domains of function that apply to all age groups: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. See 20 C.F.R. §§ 416.926a(b)(1), 416.926a(g)-(l).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant was born on May 21, 2004, and a "school age" child as of the application date and at all times relevant to this matter. 20 C.F.R. § 416.926a(g)(2)(iv). (Tr. at 16, Finding No. 1.) Next, the ALJ found that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: attention deficit hyperactivity disorder (ADHD) and learning disorder. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal any

4

Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4.) The ALJ then found that Claimant had a "marked limitation" in attending and completing tasks, but less than marked limitations in four of remaining domain functions, and no limitation in her ability to move about and manipulate objects, thus finding she did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (Tr. at 17, Finding No. 5.) On this basis, the ALJ found Claimant was not disabled. (Tr. at 26, Finding No. 6.)

**Plaintiff's Challenges to the Commissioner's Decision**

Plaintiff asserts that the combination of Claimant's physical and mental impairments would cause marked limitations in at least two additional domain functions, specifically, in her ability to acquire and use information and in her ability to interact and relate to others. (Document No. 12 at 5-6.) Plaintiff contends that the testimonies given at the administrative hearing support such limitations. (Id. at 6.) Plaintiff points out that the medical evidence also validates the testimonial evidence, namely from Emily E. Watson, M.A., consultative psychologist, James Lewis, M.D., treating physician, and Daniel Whitmore, D.O., treating physician. (Id. at 6-7.) Because the ALJ's decision is not supported by substantial evidence, Plaintiff asks that Claimant be awarded SSI benefits, or alternatively, asks the Court to remand this matter for rehearing and granted her costs. (Id. at 7.)

In response, the Commissioner argues that Plaintiff is asking the Court to reweigh the evidence relating to the domains of functioning, which is prohibited under substantial evidence review. (Document No. 15 at 10.) The Commissioner states that the evidence discussed by the ALJ did not demonstrate that Claimant had marked limitations in her ability to acquire and use information, as shown by her IQ test, Wechsler Intelligence Scale for Children – Fourth Edition

5

(WISC-IV) and Wide Range Achievement Test, Fourth Edition (WRAT-4) scores. (Id. at 12-13.) In addition, Claimant's school records show that she did not need special education services, that she no longer needed speech and language services prior to the alleged onset date in October 2012, and that when on her ADHD medication, she did well in school. (Id. at 13.) State agency psychologists found Claimant had less than marked limitations in this domain. (Id.) Further, the Commissioner points out that Claimant's diagnoses of ADHD and learning disorder are not automatically disabling without a corresponding functional loss.[1] (Id. at 13-14.)

Next, the Commissioner asserts that substantial evidence did not support a finding that Claimant had a marked limitation in the domain of interacting with and relating to others: Claimant testified that her favorite activity was spending time and talking with her friend, Jessie; Claimant testified she wanted to return to gymnastics; and Claimant enjoyed a variety of activities, including playing with a neighbor friend, though her friend recently moved away. (Id. at 14-15.) In addition, Claimant's school records did not document problems interacting with her peers or teachers, and Plaintiff herself did not report significant problems at home during appointments with Claimant's pediatrician. (Id. at 15.) State agency psychologists found only less than marked limitations in this domain. (Id.)

The Commissioner adds that though Claimant had some limitations, the evidence did not support a finding that they reached levels that functionally equal a Listing. (Id.) Because substantial evidence supports the final decision, the Commissioner asks the Court to affirm it. (Id. at 16.)

---

[1] See, e.g., 20 C.F.R. § 416.925(d); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). (Document No. 15 at 14.)

6

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

School Records:

Claimant was discharged from speech and language special education services after reaching age appropriate levels in 2010, just before her sixth birthday. (Tr. at 220-224.) Since then, there is no evidence of Individualized Education Plans (IEPs) or special education services. For the 2014 school year, Claimant's fourth grade transcript described her reading class as developmental reading, but there is no IEP showing continued eligibility for special education services. (Tr. at 325.) In a treatment note dated March 11, 2013, Plaintiff reported to Dr. Whitmore that Claimant was not eligible for special education services. (Tr. at 601.) Although Plaintiff testified that Claimant would be repeating the fourth grade, Claimant successfully advanced to the fifth grade. (Tr. at 363.) Plaintiff testified that Claimant had been held back in school two times, however, Claimant's age (11 years old) and grade level indicate that at most, she repeated one grade level, though the submitted school records are unclear.[3] (Tr. at 350-361.)

School records also document significant absences with 21 absences during the 2014-2015 school year. (Tr. at 327-328.) School records from 2014 show grades ranging from A to D; specifically, Claimant received A's in science and health, a B in social studies, a C in English, and D's in math and reading. (Tr. at 325-326.) She also had satisfactory grades in physical education, music and art classes. (Id.) School records during the 2014-2015 school year show a temporary

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.
[3] A treatment note from Dr. Daniel Whitmore dated April 19, 2010 indicated that Claimant was having trouble in school and that "[s]he may have to repeat kindergarten[.]" (Tr. at 502.)

7

decline in grades in early 2015. (Tr. at 350.) Claimant continued to receive A's in health and science, but her grades fell to a D in social studies and an F in math. (Tr. at 355-358.) However, as noted *infra*, medical records show improvement with an increased dosage of medication. (e.g., Tr. at 620, 624.) Additionally, reading testing in January 2015, when Claimant was in fourth grade, showed that her reading level was just below the fourth grade level at 3.7. (Tr. at 361.)

Medical Evidence:

Claimant initially sought treatment for behavioral issues in November 2009. (Tr. at 505.) James Lewis, M.D., assessed her with ADHD in March 2010 and started her on Vyvanse. (Tr. at 535.) However, Claimant's medication was discontinued after starting it due to side effects. (Tr. at 502.) In October 2012, Claimant saw her pediatrician, Daniel Whitmore, D.O., to discuss restarting ADHD medications. (Tr. at 405.) Plaintiff indicated that she was having attention problems in school and at home. (Id.) Dr. Whitmore referred Claimant for an ADHD evaluation before restarting medications. (Id.)

Claimant subsequently underwent an ADHD evaluation[4] at The Word House with Jennifer Russell, a psychologist under the supervision of Cynthia Clay, L.P. (Tr. at 394-401.) At the time of the evaluation, Claimant was eight years old and in the second grade. (Tr. at 394-395.) On examination, she had good eye contact and normal speech. (Tr. at 396.) Claimant had poor insight and anxious mood, but normal motor behavior, fair attention and concentration, intact memory, logical and sequential thought processes, and no indication of psychotic features. (Id.) Ms. Russell also administered the WRAT-4 and WISC-IV. (Tr. at 398-399.) On the WRAT-4, Claimant scored a grade equivalent of 2.4 in word reading, 2.8 in spelling, and 1.5 in math computations. (Tr. at

---

[4] Ms. Russell's/Ms. Clay's evaluation took place on three separate occasions: October 20, 2012; November 17, 2012; and December 1, 2012. (Tr. at 394.)

398.) On the WISC-IV, she yielded a verbal comprehension index of 85, perceptual reasoning index of 92, a working memory index of 86, a procession speed index of 80, and a full-scale IQ of 82. (Id.) These scores placed Claimant in the "low average" range of intellectual functioning. (Tr. at 398-399.) Based on this examination, Ms. Russell assessed Claimant with ADHD, predominantly inattentive type, and adjustment disorder with anxiety and rated Claimant's global assessment of functioning score at a 58.[5] (Tr. at 399.) Ms. Russell recommended that Claimant discuss medical treatment with her pediatrician, seek individual psychotherapy services, and participate in outdoor activities or other appropriate hobbies. (Tr. at 400.)

Thereafter, Claimant presented for regular appointments with Dr. Whitmore who managed her ADHD medication. Treatment notes document improvement in Claimant's ADHD with medication. Specifically, after Claimant's medications were adjusted in March and April 2013 (Tr. at 599, 601.), she reported doing better on Focalin with no side effects. (Tr. at 596.) In May 2013, Dr. Whitmore noted that Claimant was doing well, but her mother wanted to stop Focalin over the summer. (Tr. at 595.) In August 2013, Claimant reported doing well in school off Focalin. (Tr. at 589.) Dr. Whitmore restarted Claimant on Focalin in October 2013, after she reported poor grades and difficulty paying attention at school. (Tr. at 586.) Due to side effects, Dr. Whitmore had to change Claimant's medications later in October 2013 and again in November 2013. (Tr. at 581-585.) By November 15, 2013, Claimant was started on Adderall. (Tr. at 582.)

---

[5] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

In December 2013, Claimant saw Emily Wilson, M.A., for a psychological consultative examination at the behest of the State agency. (Tr. at 494-500.) During the interview, Plaintiff reported her daughter suffered from ADHD and could not sit still. (Tr. at 496.) She also reported that Claimant enjoyed coloring, going outside, playing with her dogs, swimming, going to the park, and playing with her neighbor/friend (although her friend recently moved). (Tr. at 497-498.)

Plaintiff also stated that Claimant watched movies with the family and played independently in her room. (Tr. at 498.) Claimant frequently failed to do her chores and she did not participate in any structured activities, although she desired to enroll in a gymnastics program. (Id.) Plaintiff indicated that although Claimant previously participated in gymnastics, she had not returned to the program because it was difficult to provide transportation. (Id.)

Ms. Wilson found Claimant's concentration, remote memory, insight, and judgment were determined to be below average, but the remainder of her mental status examination was within normal limits. (Id.) Ms. Wilson assessed Claimant with ADHD, primarily inattentive, and noted that her prognosis was good as long as she continued to obtain consistent and appropriate psychological and psychotropic intervention. (Tr. at 498-499.)

Claimant reported doing very well at school and at home during follow up appointments with Dr. Whitmore in March and July 2014. (Tr. at 576, 578.) In October 2014, she reported that she was "doing great" and "made honor roll." (Tr. at 624.) Dr. Whitmore increased Claimant's Adderall in February 2015 after she reported some difficulty focusing at school. (Tr. at 620-622.) On April 20, 2015, Dr. Whitmore noted that Claimant was "doing much better" with well-organized and goal-directed thoughts and no decrease in concentrating ability, hyperactive behavior, or impulsive behavior. (Tr. at 616-618.)

<u>State Agency Psychological Consultants:</u>

On April 26, 2013, Leslie Devitt, Ph.D. opined that Claimant's impairments did not meet, medically equal, or functionally equal any listed impairment. (Tr. at 94-96.) Specifically, Dr. Devitt opined that Claimant had a marked limitation in the domain of attending and completing tasks, but a less than marked limitation in the domains of acquiring and using information, interacting and relating with others, and caring for herself, and no limitations in the domains of moving about and manipulation of objects, and health and physical well-being. (Tr. at 95-96.), 109-10). On December 30, 2013, James W. Bartee, Ph.D. affirmed these findings. (Tr. at 108-110.)

**The Administrative Hearing**

<u>Plaintiff's Testimony:</u>

Plaintiff testified that her daughter's largest problem was understanding information and doing well at school. (Tr. at 46-47.) She stated that Claimant had problems spelling her first name, that she had repeated kindergarten and second grade, and that she would be repeating the fourth grade. (Tr. at 44-45.) Plaintiff also stated that testing placed Claimant at the third grade level of reading and Claimant could not perform multiplication, but could perform simple math. (Tr. at 47-48, 54, 60.) She reported that Adderall helped Claimant's ADHD, but she remained extremely active even with the medication. (Tr. at 48, 54.)

As for activities, Plaintiff testified that Claimant cannot ride a bicycle without training wheels and has difficulty dressing herself and brushing her hair. (Tr. at 54, 57-58.) Claimant was in gymnastics, but stopped participating because she was being made fun of and she will not do anything if people make fun of her. (Tr. at 51-52.) Claimant uses FaceTime on her computer to

11

communicate with a friend she met on Facebook; she visits her at her house up the road. (Tr. at 55-56, 57.) Plaintiff testified that this is Claimant's only friend except for an imaginary friend named Anna she has hand since she was old enough to talk. (Tr. at 55, 56-57). Plaintiff testified that Claimant recently dyed her hair without permission and previously shaved her hair. (Tr. at 58.) Plaintiff testified that her daughter does not know her own strengths and weaknesses because she sometimes hurts her little dog, she does not do her chores, and she worries about Claimant's safety because she has run out in front of vehicles. (Tr. at 63-64.)

Claimant's Testimony:

Claimant misspelled her name and reported that she did not know her address, phone number, or birthday. (Tr. at 66, 68.) She stated that her favorite subject in school was art and her favorite activity was talking with her friend Jessie. (Tr. at 67-68.) Claimant admitted that she had an imaginary friend named Anna. (Tr. at 69.) During the hearing, Claimant instructed her imaginary friend to be quiet, but asserted what her imaginary friend said was a secret. (Tr. at 76.)

Claimant stated that she read only little books like "The Cat in the Hat" and she could perform some addition and subtraction, but she asserted that it was easier for her to add. (Tr. at 69-70.) Claimant was able to add four plus four correctly, but could not correctly subtract four from eight. (Tr. at 70.) Claimant did not recall her mother grabbing her arm to keep her from getting run over by a car, but thought maybe when she was little she did. (Tr. at 72-73.) She knew that that she was supposed to look both ways before crossing streets and testified that she does so. (Tr. at 73.) Claimant stated that she and her mother went to the store and bought hair dye from the store because she wanted to put pink highlights in her hair, but she did not want to wait for her mother to help her so she dyed her hair pink herself. (Tr. at 73-75.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

As stated *supra*, Plaintiff contends that the substantial evidence supports a finding that Claimant also has marked limitations in two additional domains: acquiring and using information, and interacting and relating to others. (Document No. 12 at 6.)

<u>Acquiring and Using Information:</u>

Pursuant to the Regulations, a school-age child without an impairment should be able to learn to read, write, and do math, and discuss history and science. <u>See</u> 20 C.F.R. §

416.926a(g)(2)(iv). In addition, school-age children should demonstrate interest in new subjects and activities (for example, science experiments and stories from history); learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions; apply learning in daily activities at home and in the community (for example, reading street signs, telling time, and making change); and use increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to the opinions of others. See Social Security Ruling 09-3p, 2009 WL 396025, at *5.

Examples of limited functioning in this domain include an inability to understand words about space, size, or time; an inability to rhyme words or the sounds in words; difficulty recalling important things learned in school the day before; difficulty solving mathematics questions or computing arithmetic answers; or talking only in short, simple sentences, and having difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3).

In addition to his review of the testimony, medical and educational evidence of record, *supra*, the ALJ found that Plaintiff "continued to dismiss recommendations for attention deficit hyperactivity disorder medication and the record shows no subsequent IEP or special education evaluation. (Tr. at 21, 392.) When Plaintiff "finally adhered to recommendations for medication in March 2013", the ALJ noted that Claimant's "records show notable improvement." (Tr. at 21.) The ALJ further recognized that "[a]lthough Ms. Russell had little contact with the claimant during the relevant period, the assessments and intelligence testing show greater functioning than asserted at the hearing", Claimant had no follow up therapy with Ms. Russell once she became compliant with ADHD medication in March 2013. (Id.)

The ALJ also found that Ms. Russell's psychotherapy notes did not include Claimant's

imaginary friend or that Claimant was unable to perform age appropriate tasks such as riding a bicycle, tying her shoes or remembering her phone number. (Id.) Though the ALJ conceded that Ms. Russell's assessments "verify significant problems attending and completing tasks", they did not demonstrate a marked impairment in acquiring and using information, and "[t]hese findings suggest exaggeration by the claimant and her mother regarding her academic abilities." (Id.)

Additionally, the ALJ considered the report provided by Ms. Wilson, and that she gave Claimant a "good prognosis with continued treatment." (Tr. at 21, 494-500.) Again, the ALJ noted that Plaintiff reported "inconsistent functioning" during Ms. Wilson's evaluation "compared to her testimony at the hearing." (Tr. at 21.) This included the testimony that Claimant had an imaginary friend, that she could not spell her own name, and that she did not know the town she lived in. (Id.)

Accordingly, in his determination that Claimant had a less than marked limitation in the domain of acquiring and using information, the ALJ explicitly found that her intelligence testing, achievement assessments, and educational records did not demonstrate she had marked limitations in this domain: (1) Claimant's spelling and reaching achievement skills were in the average range just prior to the relevant period (Tr. at 22, 382.); (2) Claimant's IQ "was found to be 82 even during a period when she was not taking attention deficit hyperactivity disorder medication" (Id.); and (3) despite the testimony given, school records showed that Claimant "is being promoted to the fifth grade". (Tr. at 22, 363-368.)

The ALJ provided a thorough analysis of the evidence that supported as well as detracted from Claimant's impairment in this domain, and ultimately, the ALJ determined that the substantial evidence of record indicated Claimant had no marked deficits in her ability to acquire and use information. The undersigned **FINDS** that the ALJ's finding and conclusion with regard

to this domain is "rational" and based on substantial evidence. Oppenheim, 495 F.2d at 397.

Interacting and Relating to Others:

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Id. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. Id.

The Regulations further provide that school-age children without an impairment should be developing more lasting friendships with children of the same age:

> You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

Id. § 416.926a(i)(2)(iv).

Conversely, examples of limited functioning in this area include:

(i) does not reach out to be picked up does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people she knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g. in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

Id. 416.926a(i)(3).

The ALJ stated that the record suggested some problems in this domain, as "evidenced by

her lack of social activities and friendships", but this contradicted with Claimant's testimony that she enjoyed interacting with her friend, Jessie. (Tr. at 24.) The ALJ noted that Plaintiff confirmed this friendship; further, though Plaintiff reported Claimant discontinued gymnastics due to teasing, Claimant "told the consultative examiner that she wanted to return to the activity." (Id.) The ALJ acknowledged that Claimant's school records showed no problems interacting with her peers or with teachers, and Plaintiff did not report to school authorities any significant problems at home. (Id.) The ALJ found that the evidence showed Claimant had less than marked limitations in her ability to interact and relate with others, and so concluded accordingly.

The undersigned **FINDS** the ALJ's finding and conclusion in this domain is supported by substantial evidence; to attempt to find otherwise would result in an improper re-weighing of the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Plaintiff's request for judgment on the pleadings (Document No. 12.), **GRANT** the Defendant's request to affirm the decision below (Document No. 15.), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 20, 2017.

_____
Omar J. Aboulhosn
United States Magistrate Judge